IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02680-NRN

ARTHUR F. WINDHORST, by and through Diane
M. Windorst as spouse and Next Friend,

Plaintiff,

v.

BNSF RAILWAY COMPANY,
f/k/a BURLINGTON NORTHERN SANTA FE
RAILWAY COMPANY,

Defendant.

## ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT # 26)

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter is before me on Defendant's Motion for Summary Judgment on Plaintiff Diane Windhorst's survival claim. (Dkt #26.) Plaintiff filed a response. (Dkt. #28.) Defendant filed a reply. (Dkt. #29.) I heard extensive oral argument on the Motion on May 7, 2019. Having considered the briefing, the attached exhibits, and the arguments of counsel, I find Defendant's motion should be and is hereby **DENIED**.

**I.    Summary of Decision.**

Diane Windhorst, as the personal representative of the Estate of Arthur Windhorst, filed this federal lawsuit on October 21, 2018, seeking recovery against BNSF Railway Company ("BNSF") under the Federal Employers Liability Act, 45 U.S.C.

§ 51, *et seq* ("FELA"). Mrs. Windhorst claims that BNSF's negligence caused her late husband's laryngeal carcinoma cancer and she is pursuing two claims against BNSF: a survival claim and a wrongful death claim. BNSF asserts in its Motion for Summary Judgment that the survival claim is barred by the FELA's statute of limitations, as it was filed more than three years after Mr. Windhorst knew or should have known his employment at BNSF might be a potential cause of his cancer.

BNSF seeks dismissal of the survival claim based on the statute of limitations for FELA claims. It is undisputed that Mr. Windhorst[1] filed a lawsuit bringing claims against BNSF within the mandatory three-year statutory period after discovering his claim. Mr. Windhorst promptly served BNSF. But he had filed his lawsuit in the wrong court, choosing to file in Illinois state court, rather than in federal court in Colorado. Because BNSF had operations in Illinois, but was neither incorporated there nor had its principal place of business there, the Illinois state court lacked personal jurisdiction over BNSF under the Supreme Court's reasoning in *Daimler AG v. Bauman,* 571 U.S. 117 (2014), as expanded to FELA claims in *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549 (2017).

One business day after the Illinois state court action was dismissed for lack of jurisdiction, Mr. Windhorst filed this suit in federal court in Colorado, which indisputably has personal jurisdiction over BNSF. But by the time this federal action was filed in the

---

[1] Mr. Arthur Windhorst was the original plaintiff in this case, and also the plaintiff in the Illinois state court lawsuit which was dismissed for lack of personal jurisdiction. Mr. Windhorst then passed away, and this lawsuit was amended to name Mr. Windhorst's widow, Diane Windhorst, as the named plaintiff, in her capacity as personal representative of the Estate of Arthur Windhorst. *See* Amended Complaint (Dkt. #21). To eliminate any confusion, I will try to refer to the Plaintiff as "Mr. Windhorst" throughout this opinion—with the understanding that Mrs. Windhorst, as personal representative of Mr. Windhorst's estate, is today the actual named plaintiff, but the lawsuit began with Mr. Windhorst as the named plaintiff.

2

District of Colorado, the statute of limitations had arguably run. So, the critical question posed by Defendant's motion and Mr. Windhorst's response is, accepting that the statute of limitations had run by the time suit was filed in Colorado, whether the statute of limitations was equitably tolled during the pendency of the Illinois state court case? If so, the disputed claim survives. If not, then Mr. Windhorst's claim fails as untimely.

I find that the statute of limitations was equitably tolled during the pendency of the state court case, and I decline to dismiss Plaintiff's survivorship claim on statute of limitations grounds. It is not contested that BNSF received notice of Plaintiff's claims within the statutory period. There is no prejudice to BNSF from the delay in filing in federal court in Colorado. Had suit been filed in federal court in Illinois, rather than state court, the case simply could have been transferred to the District of Colorado, pursuant to 28 U.S.C. § 1406(a), and there would not have been any statute of limitations problem.

The Supreme Court has recognized that, in FELA cases, the statute of limitations may be tolled where suit was originally filed in the wrong venue. *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 427 (1965). Lack of personal jurisdiction, like improper venue, can be waived by a defendant. Although BNSF did not waive the personal jurisdiction issue here, this is not a case where the Plaintiff filed suit in a court that lacked subject matter jurisdiction over FELA cases. There was a reasonable (albeit incorrect) basis for filing suit in Illinois state court. Once the Illinois state court case was dismissed, the Plaintiff showed diligence by promptly re-filing in federal court in Colorado. The Supreme Court has said that the FELA is a remedial statute that should be interpreted liberally to favor the allegedly injured party. For all these reasons, explained in more

detail below, I find the statute of limitations to have been equitably tolled during the pendency of the Illinois state court proceeding.

**II.     Undisputed Facts for Purposes of Summary Judgment.**

1. On June 6, 1977, Mr. Windhorst filled out an employment application with Burlington Northern ("BN"), a predecessor to BNSF, seeking a carman position. The application shows that Mr. Windhorst then resided in Colorado, and was married to Mrs. Windhorst.

2. Mr. Windhorst worked for BN from 1977 to 1992.

3. On July 15, 2015, Mr. Windhorst was diagnosed with cancer.

4. On July 27, 2015, Mr. Windhorst admitted to occupational exposure to alleged carcinogens as a retired railroad inspector.

5. The statute of limitations on FELA claims is three years from when the plaintiff knew or should have known of the existence of the claim. 45 U.S.C. § 56; *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1236 (10th Cir. 2001) ("[A] FELA claim accrues when the plaintiff knows or should know that his injury is merely work-related.").

6. On June 18, 2018, Mr. Windhorst, by and through his wife Mrs. Windhorst, as spouse and Next Friend, filed a complaint under the FELA in the Circuit Court of Cook County, Illinois (the "Illinois Suit"), seeking recovery against BNSF and two other railroads, the Erie Lackawanna Railway and the Consolidated Rail Corporation.

7. The Illinois Suit alleged two counts of negligence against BNSF, filed as counts III and IV. Count III stated that "Plaintiff worked for BNSF based out of a train

yard located in Denver, Colorado from approximately 1973 until 1993, when he retired from railroad work."

8. Count III of the Illinois Suit also alleged that BNSF conducted and continues to conduct substantial business within Cook County, Illinois at multiple major facilities and offices. At oral argument, BNSF's counsel did not dispute that BNSF had and continues to have substantial operations in Cook County, Illinois.

9. In the Illinois Suit, on July 25, 2018, arguably the day before the three-year statute of limitations was to run on Mr. Windhorst's FELA survivorship claim, BNSF filed a Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction. BNSF maintained that the Illinois state court did not have personal jurisdiction over BNSF because: (1) no injury occurred in Illinois; (2) BNSF is incorporated in Delaware; (3) BNSF's principal place of business is in Texas; and (4) the contacts with Illinois were not sufficient to permit general personal jurisdiction under the rules laid out in *Daimler*, 571 U.S. 117, and *Tyrrell*, 137 S. Ct. 1549.

10. Until the Supreme Court's decision in *Tyrell*, a plaintiff in a FELA action was given a choice of forum, including filing suit in any district or location the defendant railroad does business. On its face, Section 56 of the FELA seems to indicate that a FELA action could be brought in any district "in which the defendant shall be doing business at the time of commencing such action." 45 U.S.C. § 56. The *Tyrell* decision changed that (or at least clarified the law on the issue), holding that the personal jurisdiction limitations imposed by *Daimler* apply

equally to FELA cases, explaining that Section 56 of the FELA is merely a venue provision that does not address constitutional personal jurisdiction limitations.

11. On October 18, 2018, the Illinois state court held a hearing on the matter, and decided to dismiss the case for lack of personal jurisdiction. It declined to address the tolling of the statute of limitations, stating that if Mr. Windhorst were to refile the case in another jurisdiction, "any future determinations in terms of jurisdictions or issues related to statute of limitations will be considered by that other court."

12. On October 21, 2018, three calendar days (one business day) after the October 18, 2018 dismissal order, Mr. Windhorst filed a complaint against BNSF in this Court, alleging the same claims against BNSF as from the Illinois Suit.

13. Mr. Windhorst died on October 20, 2018, and his counsel amended the complaint so that Mrs. Windhorst became the plaintiff as the Personal Representative of Mr. Windhorst's Estate.

14. Mrs. Windhorst (as Personal Representative) alleges two claims against BNSF: (1) a survival claim, and (2) a wrongful death claim, based on Mr. Windhorst's employment with BNSF.

### III. Defendant's Argument that the Survival Claim should be Dismissed on Statute of Limitations Grounds.

BNSF argues the survival claim should be dismissed on statute of limitations grounds. There is no argument that the wrongful death action was not timely filed, because that claim was added after Mr. Windhorst died and within three-years of his death. Thus, the instant motion only applies to the survival claim.

If no exception to the statute of limitations were to apply, the survival claim should be dismissed as untimely if the claim accrued when BNSF argues it did—at the time of Mr. Windhorst's cancer diagnosis, and subsequent acknowledgement to occupational exposure to carcinogens on July 27, 2015. According to BNSF, as soon as Mr. Windhorst knew that his employment was a potential cause of his injury, the statute of limitations started to run on his survival claim. *See United States v. Kubrick*, 444 U.S. 111, 123 (1979) (holding that a plaintiff need only know that his employment was a potential cause of his injury).

But Mr. Windhorst did file suit in Illinois state court within the statute of limitations. And once the Illinois state court action was dismissed, Mr. Windhorst immediately filed the same claim against BNSF in federal court here in Colorado.

The Supreme Court has approved the tolling of the statute of limitations in FELA cases on equitable grounds where suit is originally timely filed in the incorrect state court venue. *See Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424 (1965). As the Supreme Court announced in *Burnett*, "[we] conclude that when a plaintiff begins a timely FELA action *in a state court having jurisdiction*, and serves the defendant with process and the plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit." *Id.* at 434-35 (emphasis added). The Supreme Court in *Burnett* gave many reasons why equitable tolling should apply where a plaintiff had timely filed a claim, but in the wrong state court venue. These include:

- the Supreme Court had previously held that the FELA limitations period "is not totally inflexible, but, under appropriate circumstances, it may be extended beyond three years";

- extending the limitation period on equitable grounds "effectuates the basic congressional purposes in enacting this humane and remedial Act.";
- statutes of limitations are designed to assure fairness to defendants, via a policy of repose, and that policy may be outweighed where a plaintiff has not slept on his rights but brought an action within the statutory period (albeit in the wrong court);
- where a defendant is timely notified via service within the statutory period, the defendant could not have relied on the policy of repose, because the defendant was aware the plaintiff was actively pursuing his FELA remedy;
- allowing for equitable tolling promotes uniformity and encourages plaintiffs to take advantage of both state and federal courts because, had the *Burnett* plaintiff originally filed in federal court, rather than state court, the case could have been transferred under 28 U.S.C. § 1406(a) in the interest of justice, and there would not have been a statute of limitations problem;
- the very filing of a lawsuit (even if in the wrong venue) itself shows proper diligence on the part of the plaintiff which the FELA statute of limitations is intended to insure; and
- a "uniform rule tolling the federal statute for the period of pendency of the state court action and until the state court dismissal order becomes final is fair to both plaintiff and defendant, carries out the purposes of the FELA, and best serves the policies of uniformity and certainty underlying the federal limitation provision."

*Id.* at 427-436.

BNSF argues that equitable tolling, as permitted in *Burnett*, does not apply here for two distinct reasons. First, quoting from *Burnett*, BNSF insists that for equitable tolling to apply under *Burnett*, the action must be timely filed in a "state court having jurisdiction." BNSF argues that because there was no *personal* jurisdiction over BNSF in the Illinois state court, the rule in *Burnett* does not apply.

Second, BNSF argues that even if, under certain limited circumstances, the tolling rule articulated in *Burnett* could apply to cases dismissed for lack of personal jurisdiction, there would have to be a reasonable basis for the plaintiff to have filed in the incorrect jurisdiction in the first place. According to BNSF, a reasonable basis is required to show the plaintiff's diligence in attempting to bring suit. BNSF argues that Mr. Windhorst had no reasonable basis for filing in Illinois state court in Chicago. As BNSF points out, the *Daimler* decision had been decided in 2014, and the *Tyrrell* decision, which extended the rule in *Daimler* to FELA cases (arguably changing decades of accepted wisdom about where injured railroad workers could sue the railroads they worked for), was decided on May 30, 2017, more than a year before Mr. Windhorst filed his Illinois state case. BNSF argues that Mr. Windhorst should have been aware of the Supreme Court case—*Tyrrell*—that applied *Daimler* to FELA cases and necessarily required BNSF to be sued either in its principal place of business, its state of incorporation, or the state where the injury occurred, not merely a location where the railroad has substantial operations. Failure to be aware of *Tyrrell* showed a lack of diligence and thus, argues BNSF, there was no reasonable basis for filing in the wrong court.

I disagree with both of BNSF's arguments.

9

### IV. The Principles articulated in *Burnett* that Allow Equitable Tolling can Apply to a Case Dismissed on Personal Jurisdiction Grounds.

BNSF argues that *Burnett*, which allows for equitable tolling where a FELA lawsuit has been filed in the wrong *venue*, should not apply where the initial lawsuit is mistakenly filed in a court that lacks *personal jurisdiction* over the defendant. And BNSF cites some cases that could be viewed as supporting this argument. *See, e.g.*, *Fox v. Eaton Corp.*, 615 F.2d 716, 719 (6th Cir. 1980) (stating, in a Title VII case, "[w]e believe that, as a general matter, the filing of an action in a court that clearly lacks jurisdiction will not toll the statute of limitations."); *Schor v. Hope*, Civ. No. 91-0443, 1992 WL 22189, *2 (E.D. Pa. Feb. 4, 1992) (refusing to apply *Burnett'*s equitable tolling concepts to securities case, in part because "[d]ismissal for lack of personal jurisdiction is not the same as dismissal for improper venue").

I do not accept that *Burnett* is so limited. Dismissal of a timely filed FELA state court case for lack of personal jurisdiction (as opposed to lack of venue) may, under the appropriate circumstances, allow for equitable tolling of the statute of limitations. The *Fox* case, cited above, was a Title VII case, and ultimately the court *did* toll the statute of limitations there based on the erroneous filing of a Title VII sex discrimination case in Ohio state court. *See Fox*, 615 F.2d at 720 (holding that commencement of a Title VII action in a state court that lacked jurisdiction was nevertheless sufficient to toll the ninety-day period within which the plaintiff was required to commence a civil action). And the *Schor* case did not involve the FELA either, but instead a § 10(b) claim under the federal securities laws. The *Schor* decision pointed out that the Supreme Court in *Lampf, Pleva, Lipkid, Prupi & Petigrow v. Gilbertson*, 501 U.S. 350 (1991),

10

explicitly rejected the doctrine of equitable tolling as applicable to § 10(b) claims. *See Schor* at *3 (quoting *Lampf* as explaining that "it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1- and 3- year structure" of limitations for § 10(b) claims). Securities fraud claims under Section 10(b) do not arise, as the FELA does, out of a remedial statute.

By contrast, numerous other courts have found that when a FELA case initially is filed in a court that lacks personal jurisdiction, *Burnett*-type equitable tolling may well apply. The best example is the follow-on case to Supreme Court's *Tyrrell* decision. That case was originally filed in Montana state court. After the case was dismissed for lack of personal jurisdiction by the United States Supreme Court, the *Tyrrell* plaintiff refiled against BNSF in the United States District Court for the District of South Dakota. By then, the statute of limitations for his FELA claim had expired, and BNSF sought dismissal on statute of limitations grounds, arguing (as BNSF does here) that *Burnett* equitable tolling only applies to situations where a first suit had been filed in a court that had proper jurisdiction, but venue was incorrect.

Confronted with the *Tyrrell* situation (similar to the situation the Windhorsts find themselves in), Judge Lange of the District of South Dakota engaged in a detailed and extensive analysis of whether *Burnett* equitable tolling could apply where the original case was filed, wrongly, in state court and then dismissed on personal jurisdiction grounds. *See Tyrrell v. BNSF Ry. Co.*, No. 17-cv-04120-RAL, 2018 WL 2944529 (D. S.D. June 12, 2018). Judge Lange identified numerous cases, including appellate cases, where the filing of an earlier suit that had been dismissed for lack of personal jurisdiction could toll the statute of limitations. *Id.* at *9. Two of the decisions identified

11

by Judge Lange, *Abyeta v. BNSF Ry. Co.,* No. 2:17-CV-0350-TOR, 2018 WL 327283 (E.D. Wash. Jan. 8, 2018), and *O'Dea v. BNSF Ry. Co.,* No. CI 17-2342 (District Court of Lancaster Cty., Neb. Feb. 14, 2018), specifically involved FELA cases that were filed in state court but then dismissed for lack of personal jurisdiction after the Supreme Court's decision in *Tyrrell*. "The courts in *Abyeta* and *O'Dea* reasoned that applying equitable tolling would advance FELA's goal of a uniform limitations period. That is so because while a suit filed in federal court lacking personal jurisdiction can be transferred rather than dismissed, the same option might not be available for a suit filed in state court." *Tyrrell*, 2018 WL 2944529, at *9.

Without repeating Judge Lange's extensive and detailed analysis, which applied the factors articulated in *Burnett* to a FELA case dismissed for lack of personal jurisdiction (as opposed to lack of venue), it is enough to say that I find it persuasive. Like Judge Lange, I decline to find the cases cited by BNSF "as prohibiting equitable tolling whenever the prior case is dismissed for lack of jurisdiction. In particular, these cases do not bar equitable tolling when the plaintiff had a reasonable basis for filing his case in the wrong jurisdiction." *Id.* at *10 (citations omitted). *See also Abeyta*, 2018 WL 1321036, at *1 ("equitable tolling is a 'flexible' tool based on equitable considerations that can meet varying, new situations") (citing *Holland v. Florida*, 560 U.S. 631, 650 (2010)).

**V.     Equitable Tolling Applies to the Circumstances of this Case.**

Having decided that *Burnett*-style equitable tolling can apply to a FELA case filed in a court that lacks personal jurisdiction over the defendant, I have to decide whether to apply equitable tolling in this specific case. BNSF's main argument here is that it was

12

not reasonable for Mr. Windhorst to have filed in Illinois state court. This is in contrast to the *Tyrrell* plaintiff, where there may have been some doubt as to whether the *Daimler* personal jurisdiction rules applied to a FELA case. Once the Supreme Court decided *Tyrrell* in 2017, BNSF's argument goes, any plaintiff with a FELA claim should have *known* that filing in a location where the corporate defendant merely had substantial business operations was not enough to establish personal jurisdiction. Therefore, according to BNSF, filing in Illinois state court was patently unreasonable, and equitable tolling should not apply because Mr. Windhorst did not show sufficient diligence in pursuing his claim. This reasoning has been seen in certain cases.

For example, *Reichert v. Mon River Towing, Inc.*, No. 2:09-cv-1493, 2010 WL 419435 (W.D. Pa. 2010), was a Jones Act case where the plaintiff, a Pennsylvania resident, filed suit against a Pennsylvania corporation in an Ohio state court for an accident that occurred in Pennsylvania. The Ohio state court case was dismissed for lack of personal jurisdiction, and the Plaintiff thereafter sued in Pennsylvania federal court. By then, the statute of limitations had run. The Pennsylvania federal court refused to apply *Burnett*-style equitable tolling, in part because the "failure to file the original case in Pennsylvania is inexplicable and inexcusable." *Id.* at *3. But, in addition, the *Reichert* court emphasized that although the lawsuit itself was timely filed, service of the original complaint on the defendant had not been accomplished within the statutory period, and thus the defendant "did not receive actual notice of the action until after the statute had expired." *Id.* (citing *Burnett*, 380 U.S. at 428, in which the court commented it is unjust not to put an adversary on notice to defend within the limitations period).

When asked at oral argument why Mr. Windhorst had filed suit in Illinois rather than Colorado, Plaintiff's counsel explained that with the original lawsuit, he was trying to file in a location where all three of the railroads for which Mr. Windhorst had worked could be (or would be willing to be) sued. One of the original defendants was Consolidated Rail Corp. (or "Conrail"). Mr. Windhorst unquestionably worked for Conrail in Cook County, Illinois. *See* Original State Court Compl. at ¶ 14 (Dkt. #26-5). Although it appears that Mr. Windhorst worked for BNSF only in Denver, with BNSF having substantial operations and assets in Cook County, Illinois, and Conrail potentially being liable on a percentage basis for Mr. Windhorst's alleged carcinogenic exposure (along with Mr. Windhorst's other railroad employers), it was reasonable for Mr. Windhorst's counsel to try to find a single location where as many of the potential defendants as possible could be found and sued together. As described in the state court complaint at Paragraph 52, BNSF's operations in Cook County Illinois were very substantial, including "multiple major facilities and offices," the Corwith Intermodal Facility (which, according to Wikipedia, was once the world's largest railway yard), the Cicero Yard, and logistical management of these train yards and trains all directed from an office located across the street from where the Illinois lawsuit was filed. While under *Daimler* and *Tyrrell* there may not be personal jurisdiction over BNSF in Cook County, Illinois, in light of these facts, and the legitimate desire to name both Conrail and BNSF as defendants in the same lawsuit, I do not find Mr. Windhorst's filing of suit in Illinois to have been unreasonable or "inexplicable."

In addition, unlike in *Riechert*, service on BNSF was effectuated within the deadline for the statute of limitations, so that BNSF was in no way prejudiced (at least

as far as notice goes) by Mr. Windhorst's Illinois filing. BNSF could not have relied on the principle of repose, because it got notice within the requisite three years of Mr. Windhorst's intention to file suit against it. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period . . ..").

I also find of interest the fact that after being served with the complaint in the Illinois state court case, BNSF waited until just one day before the statute of limitations expired to file its motion to dismiss based on lack of personal jurisdiction. It was represented at the hearing that there was no conferral before BNSF filed the dispositive motion, and BNSF's attorneys did not otherwise bring the lack of personal jurisdiction to the attention of Mr. Windhorst's counsel prior to filing the motion to dismiss. Had BNSF done so, and advised Plaintiff of its intent to move for dismissal, presumably Mr. Windhorst could have timely filed his case in this Court. But Mr. Windhorst was not given the opportunity to do so.

In addition, this lawsuit will continue against BNSF on the wrongful death claim, regardless of whether the survivorship claim is dismissed or not. Much of the causation evidence, and other evidence of Mr. Windhorst's work experience at BNSF, will be presented regardless. In other words, this is not a question of BNSF not defending any case at all. Any alleged unfairness in requiring BNSF to defend the survivorship claim in addition to the wrongful death claim is minimal.

Finally, Mr. Windhorst acted diligently in immediately suing in Colorado once the Illinois case was dismissed. Had Mr. Windhorst sued in federal court in Illinois, I have no

doubt that the case against BNSF would have been transferred to Colorado pursuant to 28 U.S.C. § 1406(a), in the interests of justice, rather than have been dismissed. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) (28 U.S.C. § 1406(a) authorizes the transfer of cases in the interests of justice, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over defendants or not).

As *Burnett* explained, "the basic inquiry is whether the congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett*, 380 U.S. at 427. Given the humane and remedial nature of the FELA, I find that applying equitable tolling to the circumstances of this case furthers the congressional purpose, and the Defendant is not being treated unfairly, given that it received fair notice of the claims within the statutory period. "When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitations would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure." *Irwin*, 369 U.S. at 467.

For all these reasons, I believe equitable tolling should and does apply to Mr. Windhorst's survival claim against BNSF, and therefore I DENY Defendant BNSF's Motion to Dismiss the survival claim on statute of limitations grounds.

Dated this 17th day of May, 2019.

                                          BY THE COURT:

                                          N. Reid Neureiter
                                          United States Magistrate Judge